OPINION
{¶ 1} Defendant-appellant Lyndon Johnson appeals from an order of the trial court that, among other things, orders him to pay "100% of the uninsured medical, dental, optical, and orthodontia expenses for the minor child [of the parties] not otherwise covered by insurance." Mr. Johnson argues that the trial court abused its discretion in so ordering, and that the order is against the manifest weight of the evidence, because the trial court based its order upon its erroneous conclusion that Mr. Johnson had failed to comply with a previous order to pay the child's uncovered medical expenses, and that Mr. Johnson had been held in contempt as a result of his failure to provide medical insurance coverage for the child.
 {¶ 2} We conclude that the record fails to portray the errors assigned. From our review of the record, we find support for the trial court's conclusion that Mr. Johnson had failed to comply with a previous order to pay the child's uncovered medical expenses, and that he had been held in contempt. Furthermore, the order from which this appeal is taken provides for a reconsideration of the allocation of uncovered medical expenses "[i]n the event [Mr. Johnson] provides to the Court * * * through a subsequent filing that he has paid his full share of the past medical, dental, optical and orthodontia expenses incurred by the minor child * * *." We find that the order from which this appeal is taken is neither an abuse of discretion nor against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Mr. Johnson and plaintiff-appellee Diana Johnson were divorced in 1992. In 1994, Ms. Johnson filed a motion that, in Branch II thereof, sought an order holding Mr. Johnson in contempt "for failing to abide by the Standard Order of Health Care Needs For Dependent Children, to wit: Defendant has not provided Plaintiff with information regarding the benefits, limitations and exclusions of the coverage, nor the necessary insurance forms, nor insurance cards."
 {¶ 4} The Referee who heard Ms. Johnson's motion filed a "Report Recommendation" that included the following paragraph pertaining to the contempt issue:
 {¶ 5} "Plaintiff's Motion in Contempt is well taken and is, therefore, GRANTED. Defendant was ordered to provide coverage. By leaving the employ of the City of Fairborn, Defendant lost his medical insurance coverage on the child. Defendant is found to be in contemp and is hereby fined $100.00 and sentenced to 10 days in the Greene County Jail. Defendant may, however, purge himself of contemp by providing proof of payment of all medical bills of the minor child, incurred since the lapse of medical insurance coverage and providing proof of medical insurance coverage priorto the date of imposition of sentence, which shall be on Friday,August 26, 1994, at 10:00 o'clock a.m. before the HonorableJudson L. Shattuck, Jr." (Underlining in original.)
 {¶ 6} Subsequently, the Referee who heard Ms. Johnson's motion filed "Supplemental Report Recommendation." In his supplemental report and recommendation, the Referee used what appears to be the exact same language to dispose of all other aspects of Ms. Johnson's motion, but includes no paragraph addressing the contempt issue.
 {¶ 7} By entry filed July 18, 1994, the trial court "adopted and approved" both the initial report of the Referee, and the supplemental report, both of which were specifically referenced by date, and both of which were attached to the judgment entry approving and adopting them.
 {¶ 8} In February, 2004, the Greene County Child Support Enforcement Agency issued a request for administrative review of child support and medical coverage. In response, Mr. Johnson filed a motion seeking a modification of his child support obligation, a reallocation of the dependency tax exemption, and clarification of the termination date of his child support obligation. This motion was heard by the trial court on May 11, 2004. Mr. Johnson was present, represented by counsel. Ms. Johnson was present, pro se. Toward the end of that hearing, the subject of the allocation of medical expenses uncovered by insurance arose, and the following colloquy occurred:
 {¶ 9} "MR. ELLIS [representing Mr. Johnson]: Just one other — not an — an issue directly related, but in terms of the child support calculation, will that include a — a allocation of the medical expenses from (Inaudible.) I wasn't sure if this Court in terms of when you do — when you do — renew the calculation, do you — does it adjust the —
 {¶ 10} "THE COURT: No. It's not automatic.
 {¶ 11} "MR. ELLIS: — percentage.
 {¶ 12} "THE COURT: And I'm — what I'm seeing here is at the time of the divorce, it was a hundred percent his income. You weren't working at the time of the (Inaudible.) divorce?
 {¶ 13} "MS. JOHNSON: Right.
 {¶ 14} "THE COURT: So the normal thing to do is to allocate it pursuant to the percentage of the income.
 {¶ 15} "MR. ELLIS: And that's what we would ask, Your Honor.
 {¶ 16} "THE COURT: Which should be somewhere around — I could do it real quick here. Somewhere around sixty-five thirty-five, somewhere in that neighborhood.
 {¶ 17} "MS. JOHNSON: But he has never paid anything —
 {¶ 18} "THE COURT: Well, I would — one, I think I'm going to disagree with that statement because looking through the file here, I see where you brought him back to court once for contempt for not paying some medical bills. And he was ordered to pay. You remember that?
 {¶ 19} "MS. JOHNSON: But he never paid the medical bills. He got insurance.
 {¶ 20} "THE COURT: He never paid it?
 {¶ 21} "MS. JOHNSON: He got the insurance.
 {¶ 22} "THE COURT: Well, let me look here what it said.
 {¶ 23} "MS. JOHNSON: He got fined, and some — suppose to been jail time. That's when he pulled her insurance, and I wasn't aware.
 {¶ 24} "THE COURT: Well, May 17 of `94 the Court already adjusted the percentages to 62.9 to 37.8 in that decision. So it hasn't been a hundred percent (Inaudible.) since that time. He was supposed to appear back in front of Judge Shattuck after having been found in contempt back in August of `94 and show that he pay all the medical bills. You're saying that never happened?
 {¶ 25} "MS. JOHNSON: Uh-huh.
 {¶ 26} "THE COURT: I don't see any additional entry from August of `94.
 {¶ 27} "MS. JOHNSON: I would get a letter said that he did get insurance back on her after that.
 {¶ 28} "THE COURT: Uh-huh.
 {¶ 29} "MR. JOHNSON: Can I say something?
 {¶ 30} "MR. ELLIS: I think Mr. Johnson might be able to shed some light.
 {¶ 31} "THE COURT: Okay.
 {¶ 32} "MR. JOHNSON: I've always provided insurance. But some of the insurance that I've had in the past required you to go to certain doctors. And if you didn't go to those doctors, then it would cost you more out-of-pocket which —
 {¶ 33} "THE COURT: See, that's what we call water under the bridge, though. The Court found in the decision here that you owed some medical bills, and you didn't pay them. Told you to pay them up or go to jail.
 {¶ 34} "MR. JOHNSON: Does it say that in there?
 {¶ 35} "THE COURT: Uh-huh. Sure does. Found in contempt. $500 and serve ten days in the county jail. May purge himself by providing proof of payment of all medical bills of the minor child. (Inaudible.) since the lapse of medical coverage and providing, not or, and providing proof of medical insurance coverage. She's saying you provided medical —
 {¶ 36} "MS. JOHNSON: He provided it, too.
 {¶ 37} "THE COURT: — insurance coverage, but you didn't pay the bills. Why Judge Shattuck never had you in on August 26 of `94, I don't know. But she's making a pretty compelling argument to me that you shouldn't be allowed to split the cost of the insurance. You haven't paid what you were suppose to pay in the past.
 {¶ 38} "MR. ELLIS: Do we know what that amount is, Your Honor, in that decision?
 {¶ 39} "THE COURT: It doesn't say. Mr. Cartwright [the Referee in 1994] didn't put it down.
 {¶ 40} "MR. ELLIS: So how can my client be — have to pay something he — if the record doesn't even indicate what the amount is?
 {¶ 41} "MR. JOHNSON: But at that time I showed that I did provide insurance.
 {¶ 42} "THE COURT: Well, Mr. Ellis, I don't have a whole lot of sympathy for that situation either because you were here. You were listed as counsel on record in here. You had a question about that, you should have cleared it up at that point. My — my guess is, as normal practice, everybody knew the numbers we were talking about and Magistrate just didn't write it in there.
 {¶ 43} "Bring me some evidence or proof that you paid up those bills during that period of time, and I'll reconsider that decision. And until then, we'll just — you'll be again responsible for a hundred percent of the uncovered. Anything else we need?
 {¶ 44} "MR. JOHNSON: It's not (Inaudible.)
 {¶ 45} "MR. ELLIS: No. I believe that's —
 {¶ 46} "THE COURT: I'll do the calculation and attach a copy to my decision then.
 {¶ 47} "MR. ELLIS: Okay.
 {¶ 48} "THE COURT: Any questions?
 {¶ 49} "MS. JOHNSON: I have all kinds of medical bills here throughout the years, but —
 {¶ 50} "THE COURT: Supply them to Mr. Ellis, and he'll see what he can do about getting them paid."
 {¶ 51} Thereafter, the trial court entered the order from which this appeal is taken. Among other things, the order requires Mr. Johnson to be responsible for all of the uninsured medical, dental, optical, and orthodontia expenses of the minor child of the parties, but further provides that the allocation of those uninsured medical expenses will be reconsidered upon Mr. Johnson's providing proof "that he has paid his full share of the past medical, dental, optical and orthodontia expenses incurred by the minor child." From this order, Mr. Johnson appeals.
 II {¶ 52} Mr. Johnson's assignments of error are as follows:
 {¶ 53} "The trial court abused its discretion in requiring the appellant to be responsible for one hundred percent (100%) of the parties' child's uninsured medical, dental, optical, and orthodontia expenses.
 {¶ 54} "The trial court's decision requiring the appellant to be responsible for the parties' child's uninsured medical, dental, optical and orthodontia expenses was against the manifest weight of the evidence."
 {¶ 55} Mr. Johnson grounds both of his assignments of error upon the proposition that the trial court erred when it found that he had previously been found in contempt for failing to pay a prior order of the trial court concerning the payment of uninsured medical expenses. He argues that because the trial court based its order upon a mistake of fact, the order is both against the manifest weight of the evidence and an abuse of discretion.
 {¶ 56} We agree with Mr. Johnson that Ms. Johnson, in her 1994 contempt motion, did not allege that Mr. Johnson failed to pay medical expenses, having alleged instead that Mr. Johnson failed to provide certain information relating to insurance coverage. We disagree with Mr. Johnson's contention that he was never held in contempt.
 {¶ 57} Although the record is not clear in this respect, the referee did find, in his original report and recommendation, that Mr. Johnson was in contempt of that part of the original judgment and decree of divorce requiring him to maintain medical insurance coverage for the child. Mr. Johnson contends that the referee's subsequently filed "Supplemental Report and Recommendation" replaced and superseded his original report and recommendation. It may have been intended to do so, in view of the fact that all of the provisions other than the one pertaining to the contempt issue were preserved intact. Nevertheless, the contempt issue, despite having been raised in Ms. Johnson's motion, was not addressed at all in the referee's "Supplemental Report and Recommendation." Specifically, the supplemental report and recommendation did not find Mr. Johnson not to have been in contempt, as alleged by Ms. Johnson.
 {¶ 58} Furthermore, the trial court expressly approved and adopted both the original report and recommendation and the supplemental report and recommendation, having attached both to the entry approving and adopting them. That may have been inconsistent with the intent of the referee, and may even have been grounds for an appeal, but none has been taken.
 {¶ 59} When the trial court approved and adopted the original report and recommendation of the referee in 1994, which included the finding that Mr. Johnson was in contempt for having failed to provide medical insurance coverage, Mr. Johnson was adjudicated to have been in contempt. Although that adjudication does not include an adjudication that Mr. Johnson, as of 1994, had failed to pay uninsured medical expenses, both the original report and recommendation and the supplemental report and recommendation, both of which were approved and adopted by the trial court, ordered Mr. Johnson to pay 62.9% of the extraordinary medical expenses of the child from and after that date.
 {¶ 60} At the hearing on May 11, 2004, which gave rise to the order from which this appeal is taken, Ms. Johnson, who was under oath, testified that Mr. Johnson had failed to pay any of the uninsured medical expenses of the child. Mr. Johnson failed to rebut this testimony.
 {¶ 61} From our review of the record, including the colloquy from the May 11, 2004 hearing quoted at length above, we conclude that the trial court's decision to require Mr. Johnson to pay one hundred percent of the uninsured medical, dental, optical and orthodontia expenses of the child is based upon its finding that Mr. Johnson has failed to pay uninsured medical expenses that he has previously been ordered to pay. Ms. Johnson's testimony supports this finding. The trial court did not err in concluding that Mr. Johnson has previously been held in contempt for having failed to comply with orders of the court concerning medical expenses of the child, since the trial court's adjudication in 1994 does exactly that. Upon close examination, the trial court, at the May 11, 2004 hearing, never said that Mr. Johnson had been held in contempt for having failed to pay medical expenses, merely that he had been held in contempt, that he owed some medical bills, and that he should pay them or go to jail. In view of the fact that the 1994 contempt adjudication provided that Mr. Johnson could purge himself of contempt by paying all uninsured, unpaid medical expenses, the trial court's observation is at least substantially, if not completely, accurate.
 {¶ 62} We conclude that the record does not portray the errors assigned. Furthermore, in view of the provision in the trial court's order from which this appeal is taken that the trial court will reconsider its allocation of uninsured medical expenses upon satisfactory proof that Mr. Johnson has paid all of the uninsured medical expenses that he has previously been ordered to pay, we see no abuse of discretion by the trial court.
 {¶ 63} Both of Mr. Johnson's assignments of error are overruled.
 III {¶ 64} Both of Mr. Johnson's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Young, JJ., concur.